PINEHURST, INC. AND PINEHURST RECEIVABLES ASSOCIATES, INC. v. O'LEARY BROTHERS REALTY, INC., TIMOTHY W. O'LEARY, AND DENNIS O'LEARY

No. 8420SC1234

(Filed 4 February 1986)

1. **Unfair Competition § 1— unfair trade practice—evidence sufficient to support findings**

The evidence supported findings by the trial court in an unfair trade practice action that both defendants participated in sending letters concerning an improper sewage situation on lots purchased from plaintiffs, that defendants had no specific knowledge of the matters asserted in the letters, and that the defects in the sewage system were minor and technical.

2. **Libel and Slander § 3— statements subject to interpretation as true—no libel per se**

Where the trial court concluded that statements in a letter could be interpreted as true, the court could not find the letter to be libelous *per se*.

3. **Unfair Competition § 1— letters as unfair trade practice**

The trial court did not err in concluding that defendants engaged in unfair or deceptive trade practices affecting commerce in violation of N.C.G.S. § 75-1.1 by writing letters to 180 persons who had purchased lots from plaintiffs informing them of a possible "improper sewage situation" on their lots which might violate the sales contract and HUD requirements and offering to represent the lots owners if they wished to attempt to obtain a refund of the purchase price from plaintiffs.

4. **Unfair Competition § 1— unfair trade practice—punitive damages not allowed**

Punitive damages may not be awarded in an unfair or deceptive trade practice case brought under N.C.G.S. Ch. 75.

### 5. Unfair Competition § 1— unfair trade practice—nominal damages—award of attorney fees

The trial court did not err in awarding attorney fees to plaintiff in an unfair or deceptive trade practice case based on a letter sent by defendants to purchasers of lots from plaintiffs where the court found that defendants' wrongful conduct caused a disruption of plaintiffs' business and injury to their business reputation, that plaintiffs sustained actual damages of $1.00 or more, and that defendants unwarrantedly refused to remedy the conduct which was the basis for the suit.

### 6. Rules of Civil Procedure § 65— foreclosure injunction—voluntary dismissal without prejudice—injunction wrongfully obtained—award of damages

Defendants' voluntary dismissal without prejudice of their counterclaim under which they obtained an order enjoining foreclosure was equivalent to a determination that the injunction was wrongfully obtained, and the trial court properly dissolved the foreclosure and required defendants to pay interest on the mortgage debt for the ten months the sale was stayed. N.C.G.S. § 1A-1, Rule 65.

Judge PHILLIPS concurring in part and dissenting in part.

APPEAL by defendants from *Rousseau, Judge.* Judgment entered 28 June 1984 in Superior Court, MOORE County. Heard in the Court of Appeals 17 May 1985.

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by J. Robert Elster, G. Gray Wilson and Jeffrey C. Howard, for plaintiff appellees.*

*Barringer, Allen & Pinnix, by Noel L. Allen and Miriam J. Baer, and Thigpen & Evans, by John B. Evans, for defendant appellants.*

BECTON, Judge.

Each of the parties is engaged in selling or developing real estate in Moore County, particularly in the Pinehurst resort area. In December 1976 Timothy and Dennis O'Leary, the individual defendants who jointly own O'Leary Brothers Realty, Inc., bought a forty-acre tract of land which adjoins a tract of residential lots that plaintiff Pinehurst, Inc. (Pinehurst) was then selling.

The forty-acre tract was secured by the O'Learys' note and deed of trust, and that note and deed of trust, along with the other assets of O'Leary Brothers Realty, Inc., were later conveyed to Pinehurst. The residential lots, known as Unit 8A, and

the O'Learys' forty-acre tract were served by the same sewage pumping station.

Before undertaking to sell the Unit 8A lots in interstate commerce, as required by the Interstate Land Sales Act, 15 U.S.C. Secs. 1701-20 (1982), Pinehurst certified to the United States Department of Housing and Urban Development (HUD) that the sewage services were adequate. By February 1983, the pumping station was serving twenty-seven residences, eight of which were situated in Unit 8A, fourteen on adjacent land owned by Pinehurst, and five on the O'Learys' adjoining tract. During the preceding two years the O'Learys and Pinehurst had been negotiating about upgrading the sewer system and about Pinehurst's alleged obligation under the agreement made by Pinehurst's predecessor to provide memberships in Pinehurst Country Club to purchasers from the O'Learys. In February 1983, however, the negotiations reached an impasse, and the O'Learys stopped paying on their promissory note. Defendant Pinehurst Receivables Associates, Inc., a holding company that manages Pinehurst's lot sales contracts, declared the note to be in default and, on 15 April 1983, instituted foreclosure proceedings which were approved first by the Clerk of Superior Court and then by the Superior Court judge. No stay was sought in that proceeding, and an appeal from the order of sale was not perfected.

Meanwhile, the O'Learys acquired the names and addresses of the approximately 180 persons that had bought lots in Unit 8A from Pinehurst and on 15 March 1983 mailed to each of them the following letter:

Dear Pinehurst Property Owner:

We are informed that an improper sewage situation may exist where you own your lot in Unit 8A in Pinehurst, which could be in violation of the terms of your purchase contract with Pinehurst, Inc., or the conditions of the HUD registration covering the unit.

Under circumstances similar to this, Pinehurst, Inc. has been required to refund the full purchase price, plus interest, taxes, and country club initiation fees.

We would like to offer you our services to act as your agent to pursue this matter if you are interested in disposing of

your lot. We charge a commission of ten percent (10%) of the original purchase price of the lot only—but no charge on the return of any other payments that may have been incurred by you.

Obviously, we cannot guarantee you that our agency would result in the return to you of any money you may have previously paid to Pinehurst, Inc. or any of its successors. Nothing herein contained should be construed by you as a promise from us of any financial return to you; we merely offer our services to you, should you so desire.

If this is of a sincere interest to you, please complete the enclosed agreement and return it to us.

Thank you very much for your consideration of this matter, and we look forward to your positive response.

Sincerely,

O'LEARY BROTHERS REALTY, INC.

In response to the invitation made in the letter, approximately thirty Unit 8A lot owners engaged O'Leary Brothers Realty, Inc. to negotiate their supposed claims against the plaintiffs. The North Carolina State Bar, learning of this development, instituted proceedings against the O'Learys for unauthorized practice of law, but the proceedings were stopped several months later when the O'Learys agreed to stop handling the claims.

On 23 May 1983 this action for libel, tortious interference with contract, barratry, and unfair and deceptive trade practices was instituted against the defendants. All four claims were based on defendants encouraging persons that had contracted with plaintiffs to rescind the contracts and demand a refund of the payments made. By their answer, defendants admitted sending the letter but alleged in defense that the statements in the letter were true. Defendants also asserted counterclaims alleging: (1) plaintiffs breached the terms of the December 1976 land purchase agreement; (2) the foreclosure proceeding was improperly initiated after defendants had tendered full payment; and (3) the action against them constituted an unfair trade practice. In addition to actual and treble damages, defendants requested that the foreclosure proceedings be stayed. One day before filing their

answer and counterclaims, defendants sued plaintiffs in federal court for allegedly violating federal antitrust laws. Consequently, defendants moved that the state court stay this action until the federal action was resolved. The motion was denied, as were some other pretrial motions later referred to, but the court did enjoin the foreclosure sale upon the defendants giving bond therefor.

Following a trial without a jury, Judge Rousseau entered judgment for the plaintiffs on the unfair trade practices claim, but dismissed their other claims. Before ending the evidence, defendants took a voluntary dismissal without prejudice on their counterclaims. The judgment was based on findings of fact that included the following:

27. At the time defendants sent the letter of March 15, 1983, they had no specific knowledge concerning the assertions contained in the letter.

28. The sewage system in Unit 8A was fully in place and operational at the time of the March 15, 1983 letter. No public health hazard ever existed, nor was there any threat of contamination of surface waters in the area. After publication of the letter of March 15, 1983, and after institution of the present action, the North Carolina Department of Natural Resources did determine that the pump in Unit 8A, although adequate to handle the existing sewage needs, required a duplex rather than the single pump (of same specifications and size) in place, and was therefore in technical violation of the original permit issued in 1976. Prior to that time, Pinehurst Inc. had already ordered replacement equipment for the pump, and upon installation of this replacement equipment pursuant to a new permit the matter was resolved, without enforcement action, penalty or levy of fine by the state. The problems with the lift station had been minor problems. The cost of bringing the lift station into compliance with the permit was approximately $1,200. . . .

29. At the time the March 15, 1983 letter was issued by defendants the lift station which existed of [sic] defendants' property contained the same or similar type of pump which was in existence in Unit 8A of plaintiff's property, to the knowledge of all parties.

30. Prior to the letter of March 15, 1983 defendants Timothy O'Leary and Dennis O'Leary had been in negotiations with plaintiff for a period of over two years with regard to the construction of a joint sewer project to carry waste from their respective properties to the county waste water system, which joint project, had it come to fruition, would have replaced or done away with the heretofore described lift stations on each of their properties. The negotiations continued until February 1983, at which time plaintiffs declined to negotiate further on any of several pending issues between the parties until the individual defendant Timothy O'Leary cured a default on the note then owing by him to plaintiffs.

31. Prior to the issuance of the March 15, 1983 letter defendants did not contact any state or federal agencies or plaintiffs to correct any deficiencies which might have existed in the pump and lift station of Unit 8A, but rather wrote directly to the lot owners in Unit 8A as heretofore described.

. . . .

33. Plaintiff sustained actual damages of $1.00 or more in counsel fees expended in an effort to stop and restrain further publication of the letter of March 15, 1983 or further activities by defendants with regard to the letter. Plaintiffs also sustained disruption of their normal business activities, loss of administrative time, and injury to their business reputations, but did not offer evidence of specific monetary damages with regard to those items.

Based on these and other findings, the court concluded that although the letter contained no false statements, it was nevertheless unfair, deceptive, and maliciously published for an improper purpose in violation of N.C. Gen. Stat. § 75-1.1 (1985) and gave recovery to plaintiffs as follows:

1. Plaintiffs shall have and recover of defendants, jointly and severally, the sum of $1.00 in actual damages and the sum of $18,000 in punitive damages. Since the award of actual damages and punitive damages exceeds an award of treble the actual damages, the actual damages will not be trebled even though the court has found a violation of G.S. 75-1.1.

2. Plaintiffs shall have and recover of defendants, jointly and severally, the sum of $15,000 pursuant to G.S. 75-16.1 for attorneys' fees, in that defendants willfully engaged in unfair methods of competition and unfair and deceptive trade practices, and refused without warrant to pay plaintiffs' claims or to remedy the conduct which was the basis of this suit.

## I

Defendants' first four assignments of error, concerning the denial of their pretrial motions (a) for summary judgment on the barratry claim, (b) to stay this action pending the resolution of a similar case in the federal court, (c) to extend the time for and implement discovery in certain respects, and (d) to allow defendants to amend their counterclaim and bring in additional parties, need not detain us. The first question is moot because the barratry claim was later dismissed and is not before us. All the other motions were addressed to the sound discretion of the trial judge and no abuse is indicated. The federal lawsuit that defendants wanted to try first was begun by them two months after this case was filed; defendants' motion to extend the discovery period was made after the time for completing discovery had passed and after the trial of this case had been continued once at their request; and defendants' motions to amend their counterclaim and add additional parties were not made until just twelve days before the trial was scheduled to begin.

## II

[1] By three more assignments of error defendants contend that certain of the court's findings of fact—that defendant Dennis O'Leary participated in the sending of the 15 March 1983 letter, that defendants "had no specific knowledge" of the matters asserted in that letter, and that the defects in the sewage system were minor and technical—are unsupported by evidence. These contentions have no merit, and we overrule them.

Although Timothy O'Leary drafted the letter and attended to its reproduction and distribution, Dennis O'Leary, an officer and half owner of the corporation, testified that he saw the letter before it was sent, "concurred with the information in it," and discussed it with Timothy, and that the purpose of the letter was to obtain listings from property owners in Unit 8A. This evidence

is support enough for the court's determination that Dennis O'Leary participated in sending the letter and was jointly and severally liable therefor.

The finding that defendants had no "specific" knowledge concerning the assertions made in the letter is supported by the letter itself, which indicates that they merely had received information from others suggesting that Pinehurst *might* be in violation of the sales contract and the HUD requirements. The finding is also supported by Dennis O'Leary's testimony that he had not reviewed the HUD requirements, did not know whether anyone else had, had not seen the purchase contracts, and did not know which provisions Pinehurst allegedly had violated. However, as discussed later, even if this finding was unsupported, it would not affect the court's conclusion that defendants acted unfairly and deceptively in violation of G.S. Sec. 75-1.1.

Further, the court's characterization of the sewage facility defects as "minor" and "technical" was supported by the testimony of an employee of the Division of Environmental Resources of the North Carolina Department of Natural Resources and Community Development to the effect that the pump station was easily and quickly brought into compliance with regulations, that no enforcement or disciplinary action was required, and that no adverse impact resulted from the failure to comply earlier.

### III

[2]   The defendants' next contention, that the court erred in concluding as a matter of law that the letter was libelous *per se*, is correct, though of no benefit to them. Falsity is an essential element of libel, and the court, having concluded that the statements in the letter could be interpreted as true, could not find them to be libelous *per se*. Indeed, we doubt that the court intended to say that they were, as it dismissed the libel claim. In all events, this error is immaterial because the unfair or deceptive trade practice claim discussed below does not depend upon the letter being false.

### IV

[3]   The next question defendants raise is whether the court's conclusion that they engaged in unfair methods of competition

and in unfair or deceptive acts or practices in violation of G.S. Sec. 75-1.1 was erroneous. An unfair or deceptive trade practice was not defined by the General Assembly, probably because it is difficult to define safely and satisfactorily. *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 314 S.E. 2d 582, *disc. rev. denied*, 311 N.C. 751, 321 S.E. 2d 126 (1984). But courts have the capacity and authority to recognize an unfair or deceptive trade practice when they see one. *See, e.g., Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *disc. rev. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978). And we believe the court ruled correctly in deeming that defendants' conduct in this case constituted an unfair method of competing in business and an unfair or deceptive trade practice. In our opinion, the conclusions—that defendants acted unfairly and for an improper purpose; that the statements in the letter were deceptive and maliciously made; and that the wrongful conduct affected commerce—all followed from the facts found and were entirely justified.

Defendants' arguments that, because the statements in the letter were true, they could not have deceived anyone and that, in any event, they had no effect on the marketplace are rejected. Proof of actual deception is not necessary; it is enough that the statements had the capacity to deceive. *Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981); *Johnson v. Phoenix Mutual Life Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). A statement can have the capacity to deceive without being false, and that the letter in question had the capacity to deceive is obvious. Although there were no grounds for making claims against the plaintiffs, about thirty recipients of the letter accepted defendants' offer to negotiate their claims against plaintiffs, and several other recipients telephoned Pinehurst in alarm about the matter.

As to the unfairness of defendants' actions, we note that unfair competition is that which a court of equity would consider unfair. Aycock, *North Carolina Law on Antitrust and Consumer Protection*, 60 N.C. L. Rev. 207, 217 (1982) (citing *Charcoal Steak House of Charlotte, Inc. v. Staley*, 263 N.C. 199, 139 S.E. 2d 185 (1964)). Recently, our Supreme Court said:

> The concept of "unfairness" is broader than and includes the concept of "deception." . . . A practice is unfair when it offends established public policy as well as when the practice

is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. . . .

\* \* \*

An act or practice is deceptive under Section 5 if it has the capacity or tendency to deceive. . . . Proof of actual deception is unnecessary. . . . Though words and sentences may be framed so that they are literally true, they may still be deceptive. . . . In determining whether a representation is deceptive, its effect on the average consumer is considered.

*Johnson*, 300 N.C. at 263, 265-66, 266 S.E. 2d at 621, 622 (citations omitted). Thus, what is unfair in one case might not be in another, and each case rests upon its own circumstances. The circumstances that prompted the trial court in this case to conclude that defendants' acts were unfair included the following:

3. The conduct of the individual defendants and the corporate defendants in sending the letter of March 15, 1983 to the lot owners in Unit 8A, and the other conduct in connection with the letter, was unfair for the reasons, among others, that at the time plaintiffs and defendants were working together on a joint sewer system to solve their joint problems; the problem which existed with the pump and the lift station in Unit 8A was a minor problem; defendants did not then report the problem to state or federal officials, or to plaintiffs, but rather wrote to the 180 lot owners in Unit 8A; and defendants' motive in sending the letter was not for a proper purpose but rather an attempt to obtain an unfair business advantage over a competitor and prospective business associate.

That defendants' conduct may not have been actionable at common law, as they argue, is beside the point. While the common law provides some guidance in unfair competition cases, the Unfair Trade Practices Act was enacted in part because common law remedies had often proved ineffective. *Marshall.*

As to the impact of defendants' conduct on the marketplace, defendants argue that because only nominal damages resulted therefrom, the court's conclusion is not supported by the facts.

We disagree. Impact on the marketplace is not to be equated with the damages legally recoverable. Impact on the marketplace speaks more to the effect unethical practices have on business activity than to value of the damage done. *See generally,* Comment, *The Trouble with Trebles: What Violates G.S. Sec. 75-1.1?* 5 Campbell L. Rev. 119 (1982). Although the proven monetary value of the damages was low, defendants' letter affected at least 180 real estate buyers, thirty to the extent of asserting a claim against Pinehurst and many others enough to telephone plaintiffs in alarm about their purchase and investment. Acts that diminish public confidence in a business transaction and enterprise may have an impact on the marketplace, as business stability depends on public confidence. Defendants' acts obviously caused a significant segment of the public to lose confidence in their contracts with plaintiffs and in plaintiffs as reliable real estate developers. That the diminished confidence in plaintiffs' business reliability may have been of short duration, due to plaintiffs' alacrity in alleviating the minor problems that existed, does not erase the baleful impact that defendants' actions had.

V

[4] Defendants next contend that the court erred in awarding punitive damages, and they stress that this is an unfair or deceptive trade practice case brought under Chapter 75, which mandates the trebling of actual damages, N.C. Gen. Stat. Sec. 75-16 (1985), but does not mention punitive damages. Plaintiffs' response is that nothing in Chapter 75 or pertinent case law prohibits the awarding of punitive damages in appropriate cases; that the defendants' wilful and malicious violation of the chapter justifies punishment; and that trebling the $1.00 actual damage verdict would not serve that purpose.

North Carolina General Statute Sec. 75-16 establishes a private cause of action for any person injured by another's violation of G.S. Sec. 75-1.1. And damages assessed pursuant to G.S. Sec. 75-1.1 are trebled automatically. *Marshall v. Miller,* 302 N.C. 539, 547, 276 S.E. 2d 397, 402 (1981). In holding that bad faith is not an element of an unfair or deceptive trade practice, the *Marshall* Court discussed at length the broad legislative purpose in enacting Chapter 75. It rejected both the comparison between Chapter 75 and the portion of Federal Trade Commission Act

codified at 15 U.S.C. Sec. 45(a)(1), which confers no private cause of action on injured parties, and the conclusion in *United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1049 (E.D.N.C. 1980), *aff'd*, 649 F. 2d 985 (4th Cir. 1981), that G.S. Sec. 75-1.1 is completely punitive in nature. We quote from *Marshall*:

> But it is also remedial for other reasons, among them the fact that it encourages private enforcement and the fact that it provides a remedy for aggrieved parties. It is, in effect, a hybrid. . . .
>
> As it is a hybrid statute, providing a remedy for an entirely statutory cause of action, analogies to other rules of common law governing the imposition of punitive damages should not control. More significantly, whereas common law actions grounded in tort or contract *allow* both actual and multiple damages, G.S. 75-16 provides in effect that any actual damages assessed *shall* be trebled by the trial court if a violation of G.S. 75-1.1 is found. Many of our sister states provide that the awarding of exemplary or treble damages shall be proper only upon a finding of intentional wrongdoing. . . .
>
> Absent statutory language making trebling discretionary with the trial judge, we must conclude that the Legislature intended trebling of any damages assessed to be automatic once a violation is shown.

302 N.C. at 546-47, 276 S.E. 2d at 402 (citations omitted) (emphasis in original).

The *Marshall* Court suggests that the legislature's intent in enacting Chapter 75 was to supplement and broaden traditional common law actions and to provide a more easily recoverable remedy. *See* Note, *Unfair Trade Practices and Unfair Methods of Competition in North Carolina: Are Both Treble and Punitive Damages Available for Violations of Section 75-1.1?* 62 N.C. L. Rev. 1139, 1147 (1984).

Because an award of treble damages under Chapter 75 is bottomed upon "private enforcement" and "punitive measure" considerations, we believe an additional award of punitive damages would necessarily be duplicative, to the extent that the treble damage award consists of a punitive element. *Id.* And we have

not taken lightly plaintiffs' appealing argument that an additional punitive remedy is needed for intentional egregious conduct. The argument, considering the facts of this case, may impel legislative action to cover situations in which compensatory damages, even when trebled, results in a token award. In this case, our job is not to legislate, but to interpret Chapter 75 as it is written. Although we might say it differently, the following observation noted in 62 N.C. L. Rev. at 1147-48 (footnotes omitted) summarizes our response to plaintiffs' argument:

> First, the legislature contemplated intentional conduct in con- nection with a violation of section 75-1.1. Under North Carolina General Statutes section 75-16.1, a plaintiff injured by a violation of section 75-1.1 may recover attorneys' fees upon a showing that the defendant acted "willfully." Section 75-16.1 also was intended to encourage private enforcement. Although the award of attorneys' fees is not a punitive provi- sion, it does enable the plaintiff to recover an increased award for intentional wrongdoing. Had the legislature in- tended punitive damages to be available in connection with violations of section 75-1.1, they would have provided such a remedy for intentional wrongdoing.
>
> Second, in cases involving intentional wrongdoing in which treble damages are minimal, the plaintiff may pursue a common-law cause of action and seek punitive damages. Since a plaintiff may pursue the common-law and the statutory causes of action in the same suit, if punitive damages are warranted and are awarded by the jury, he may elect such a remedy in lieu of the statutory treble damages.
>
> One final ground for the mutual exclusivity of punitive and treble damages exists. Punitive damages should not be used to supplement a statutory scheme in which treble damages have been provided explicitly and no provision has been made for additional damages. . . .
>
> Because section 75-1.1 is in "derogation of the common law" causes of action for unfair or deceptive trade practices and section 75-16 imposes a penalty, strict construction is in order. Absent explicit legislative inclusion, punitive damages should be excluded from the statutory scheme.

## VI

[5] Defendants' contention that attorneys' fees are not authorized and were improperly awarded is rejected. The time devoted to the case and the value of the attorneys' services are not contested. North Carolina General Statute Section 75-16.1 (1985) provides in part as follows:

> In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, at his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
>
> > (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit.

Defendants argue that there is no evidence either of actual damage or of an unwarranted refusal to pay the claim. We disagree. Even though plaintiffs offered no proof as to the monetary value of their damages, the evidence shows and the court found that defendants' wrongful conduct caused a disruption of their business, loss of administrative time, and injury to their business reputation and that they had "sustained actual damages of $1.00 or more." And, albeit not labeled a finding, the court ruled that defendants "refused without warrant to pay plaintiffs' claim or to remedy the conduct which was the basis for the suit." This ruling, which we regard as a finding, is amply supported by the evidence, as the basis for the suit was the unfair and deceptive letter which defendants never retracted and still contend was an acceptable business practice.

## VII

[6] In entering judgment, the court also dissolved the foreclosure injunction, required defendants to pay interest on the mortgage debt for the ten months that the sale was stayed, and left defendants' security bond in effect until the foreclosure is completed. These rulings are the basis for defendants' ninth assign-

ment of error, which we consider last for the sake of convenience, since it only peripherally relates to the trial. Although Rule 65, N.C. Rules of Civil Procedure authorizes the judge to award damages upon the dissolution of an injunction or restraining order, defendants contend the award is improper because the counterclaim under which the restraining order was obtained was voluntarily dismissed without prejudice, and it thus has not been judicially established that the injunction was improperly obtained. While usually it is error to award damages for obtaining a temporary injunction without first determining that the injunction was improperly issued, *The M. Blatt Co. v. Southwell,* 259 N.C. 468, 130 S.E. 2d 859 (1963), no such determination was necessary here. The injunction was granted in this case, as the record shows and the court found, because there was probable cause to believe that defendants might be able to establish their right to the injunction upon trying the issues raised by their counterclaim. Yet, after the case was tried almost to a conclusion, defendants voluntarily dismissed their counterclaim. Though done "without prejudice," this dismissal can only be construed as an acknowledgement by the defendants that they could not establish their entitlement to the restraining order, and for the purposes of this case is equivalent to a determination that the injunction was wrongfully obtained in the first place. *Leonard E. Warner, Inc. v. Nissan Motor Corp.,* 66 N.C. App. 73, 311 S.E. 2d 1 (1984). Because the only purpose for obtaining the injunction was to have their rights fully adjudicated upon the trial of this case, defendants may not prevent the issue from being tried and then be heard to maintain that the judgment is erroneous because that issue has not been determined.

The award of punitive damages is vacated. The decision of the trial court is in all other respects affirmed.

Vacated in part and affirmed in part.

Judge PHILLIPS concurs in part and dissents in part.

Judge EAGLES concurs.

Judge PHILLIPS concurring in part and dissenting in part.

I concur with everything said in the majority opinion except the ruling setting aside the award of punitive damages. That

defendants' conduct violated the state's public policy enunciated in Chapter 75 has been established; it has also been established that the violation was committed in a manner that would warrant the award of punitive damages if the offense violated a common law rule instead of statutory policy. The Legislature clearly intended to encourage victims of unfair or deceptive practices to help enforce the statutory policy by suing violators of it; and that malicious violators of the Act be punished by the civil courts. And it also intended, it seems to me, that where trebling the damages will not promote these statutory purposes that punitive damages suitable to the wrongful and unethical character of the offense be assessed in accord with existing law. Under the aggravated circumstances of this case, which are not unique since deceitful and unfair conduct is not confined to transactions involving large sums, limiting plaintiffs' recovery and the sanctions against defendants to $3.00 makes a mockery of our Fair Trade Practices Act, as it permits a malicious violation of statutory policy to go unpunished and denies fair compensation to victims who have aided the State in enforcing its policy. And in my opinion the law requires no such holding. The common law doctrine of punitive damages has not been repealed; it is available for use by our courts in appropriate cases; this is an appropriate case for its use; and referring the question back to the General Assembly is in effect a failure to function as the General Assembly manifestly expects us to, since their task is to set policy, not decide details which arise in the trial of cases, and ours is to enforce and implement the policy adopted. I would affirm the award of punitive damages by the trial judge. I would also hold that punitive damages may be awarded where a violation of G.S. 75-1.1 is malicious, wilful and for an improper purpose and where trebling the actual damages suffered would neither punish the wrongdoer nor encourage victims to enforce the statutory policy.