Bonnie W. **HAGEMAN**, Plaintiff,

v.

**TWIN CITY CHRYSLER–PLYMOUTH INC.**, Defendant.

**Civ. A. No. C–86–950–WS.**

United States District Court, M.D. North Carolina, Winston–Salem Division.

March 15, 1988.

Herman L. Stephens, of Winston–Salem, N.C., for plaintiff.

Steve M. Pharr and G. Gray Wilson, Winston–Salem, N.C., for defendant.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

Plaintiff Bonnie Hageman filed suit alleging violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (1982), and the North Carolina Unfair Trade Practices Act, N.C.G.S. § 75–1.1 (1987). On February 17–18, 1988, the court conducted a jury trial on plaintiff's claims. At the end of plaintiff's evidence, defendant Twin City Chrysler–Plymouth moved for a directed verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure as to both of plaintiff's claims. After construing the evidence in the light most favorable to the plaintiff, as a court must when evaluating a defendant's directed verdict motion, the court granted the motion with regard to plaintiff's unfair trade practices claim. This opinion recites the evidence most favorable to the plaintiff's unfair trade practice claim and discusses the reasons for the court's decision to direct a verdict against that claim.

## FACTS

Plaintiff is an intelligent, well-educated businesswoman. In the fall of 1984, plaintiff agreed to act as defendant's advertising agent. During the course of this relationship, defendant occasionally suggested that plaintiff buy or lease a Chrysler or Plymouth automobile. Defendant apparently wanted its advertising agent to use the advertised product.

In November of 1984, plaintiff investigated the possibility of obtaining a Chrysler or Plymouth automobile. Plaintiff found a Chrysler LeBaron that she liked, and defendant began processing the paperwork necessary for plaintiff to lease this car. On November 30, 1984, the parties entered into a "Gold Key Lease Agreement." Plaintiff, after thoroughly reading the contract, signed the lease in the blank marked "lessee."

The two-page lease contract specifically addresses "TERMINATION" and "EXCESS MILEAGE CHARGE." The termination provision delineates a formula for determining a lessee's liability should the lessee terminate the lease at a date earlier than the termination date specified in the contract. This formula specifically refers to "[a]ny excess mileage charge." The termination provision also states that:

I [the lessee] agree that I have no right to premature termination of this Lease unless agreed to in writing by me, you [the lessor] and Chrysler Credit [the financer]. In the event that I am allowed to prematurely terminate this Lease, I agree that my liability will be the same as provided in this Paragraph F [entitled TERMINATION] unless otherwise agreed to in writing.

Sometime after signing this lease, plaintiff received a letter from Chrysler Credit Corporation. This letter was addressed to Bonnie and husband Bruce Hageman and indicated that Chrysler Credit would not extend credit to the Hagemans. This letter greatly upset plaintiff and caused plaintiff to meet with Jim Williamson, an employee of the defendant, to complain about the unauthorized inclusion of plaintiff's husband as a coapplicant on the credit application. Plaintiff was visibly upset during this meeting and expressed reservations about the entire lease transaction. Plaintiff also expressed concern that she might put high mileage on the car. Jim Williamson attempted to comfort plaintiff and to explain the credit transaction. During the course of this conversation, Mr. Williamson stated that plaintiff could "get out of the lease" at any time if the car's mileage got high. Williamson told plaintiff that all she had to do was take good care of the car and bring it back in before the mileage got too high. Mr. Williamson acted politely throughout this conversation, and plaintiff testified that, in her opinion, Mr. Williamson acted in good faith.

Plaintiff did not terminate the lease at the meeting with Jim Williamson. Instead, plaintiff adhered to the lease and used the car for approximately two and one-half years. Plaintiff then "traded" the car to another car dealer. In order to consummate this trade, plaintiff testified that she paid $3,466.00 to terminate the lease on the LeBaron. There was no evidence that plaintiff attempted to return the car directly to the defendant. Nor was there any evidence that plaintiff contacted defendant regarding the payment of the $3,466.00.

## DISCUSSION

In paragraph 20 of the Final Pretrial Order, plaintiff alleged that defendant represented "that the lease was for a term of two years, that plaintiff's [sic] could turn the vehicle in, transfer the lease to another vehicle or purchase the vehicle for its depreciated value before the expiration of or at the end of the lease term." Inasmuch as these representations deviate from the terms of the written lease, plaintiff claimed that these alleged representations constitute a deceptive trade practice.

At trial, counsel for plaintiff admitted that the evidence failed to support the issue alleged in the Final Pretrial Order. At the time of the directed verdict motion, counsel stated that the evidence failed to support jury issues regarding the term of the lease, the transferability of the lease, and the option to purchase. Plaintiff maintained, however, that the evidence supported the submission of an issue on whether defendant represented that plaintiff could return the vehicle before the expiration of the lease term. It is on this proposed issue that the court granted a directed verdict.

■ A trial court has the power to direct a verdict in cases where "the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict." *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943). A court must consider the evidence, and all

reasonable inferences that can be drawn from that evidence, in the light most favorable to the nonmoving party. *St. Paul Fire & Marine Insurance Co. v. Vaughn*, 779 F.2d 1003, 1008 (4th Cir.1985); *Whalen v. Roanoke County Board of Supervisors*, 769 F.2d 221, 224 (4th Cir.1985); *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106 (4th Cir.1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975). A court must direct a verdict in defendant's favor where the inference plaintiff hopes the jury will draw from the evidence is not within the realm of reasonable probability but is, instead, only a mere possibility. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 241–42 (4th Cir.1982). As the Supreme Court succinctly stated in an early case, "mere speculation [is] not allowed to do duty for probative facts." *Galloway v. United States*, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1943).

■ In the present case, the court assumed that defendant represented that plaintiff could terminate the lease at any time. Furthermore, the court assumed, without deciding the issue, that a jury could reasonably infer that plaintiff could effect this termination regardless of the mileage on the car and without penalty. Nonetheless, the evidence failed to support a claim for a deceptive trade practice.

N.C.G.S. § 75–1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." These substantive provisions are "reproduced verbatim from the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45(a)(1) (1973)," *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 48 (4th Cir.1983), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985), and the legislature adopted N.C.G.S. § 75–1.1 "to parallel and supplement the FTC Act." *Marshall v. Miller*, 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981) (good discussion of history leading to adoption of N.C.G.S. § 75–1.1).[1] As is evident from the statu-

---

1. Decisions construing the Federal Trade Commission Act, while not controlling, furnish guidance to courts interpreting the North Carolina statute. *Lindner v. Durham Hosiery Mills, Inc.*,

tory language, N.C.G.S. § 75–1.1 prohibits two separate, although related, types of conduct. The statute forbids conduct that is "unfair" and conduct that is "deceptive." [2] Plaintiff herein claims that defendant engaged in deceptive conduct.

Application of the statute in a private action is a bifurcated procedure. The jury first decides any factual issues, including whether the allegedly deceptive act proximately caused injury to the plaintiff. The court then determines as a matter of law whether the proved facts amount to a violation of the statute. *CF Industries, Inc. v. Transcontinental Gas Pipe Line Corp.*, 448 F.Supp. 475, 485 (W.D.N.C.1978) (citing *Hardy v. Toler*, 288 N.C. 303, 310, 218 S.E.2d 342, 346–47 (1975)). In the present case, plaintiff failed to present sufficient factual evidence of causation for the court to present an issue to the jury. Reasonable men could not differ on the issue of whether the acts defendant allegedly committed caused injury to plaintiff. Furthermore, plaintiff's evidence failed, as a matter of law, to demonstrate a deceptive trade practice.

### (1) Deceptive Act Requirement

N.C.G.S. § 75–1.1 does not define the term deceptive. Accordingly, the North Carolina courts have borrowed the expansive definition of "deception" that the federal courts have traditionally employed in interpreting the FTC Act. *See Marshall*, 302 N.C. at 542, 276 S.E.2d at 403 (citing *Johnson v. Insurance Co.*, 300 N.C. 247, 265–66, 266 S.E.2d 610, 622 (1980)); Annotation, *Practices Forbidden By State Deceptive Trade Practice and Consumer Protection Acts*, 89 A.L.R.3d 449 (1979 and Supp.1987); Leaffer and Lipson, *Consumer Actions Against Unfair or Deceptive Acts or Practices: The Private Uses of Federal Trade Commission Jurisprudence*, 48 Geo.Wash.L.Rev. 521, 535 and n. 87 (1980). As the North Carolina Court of Appeals recently summarized:

> In order "to succeed under G.S. 75–1.1, it is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, plaintiff must, nevertheless, show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." *Overstreet v. Brookland, Inc.*, 52 N.C.App. 444, 452–53, 279 S.E.2d 1, 7 (1981). Intent of the defendant and good faith are irrelevant. *Marshall v. Miller*, 302 N.C. 539, [548], 276 S.E.2d 397, [403] (1981). A practice or act "is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required." *Id.* at 548, 276 S.E.2d at 403. Even a truthful statement can be deceptive, if it has the capacity or tendency to deceive. "Though words and sentences may be framed so that they are literally true, they may still be deceptive." *Johnson v. Insurance Co.*, 300 N.C. 247, 265, 266 S.E.2d 610, 622 (1980).

*Chastain v. Wall*, 78 N.C.App. 350, 356, 337 S.E.2d 150, 153–54 (1985), *cert. denied*, 316 N.C. 374, 342 S.E.2d 891 (1986). *See also* Morgan, *The People's Advocate in the Marketplace—The Role of North Carolina's Attorney General in the Field of Consumer Protection*, 6 Wake Forest Intra.L.Rev. 1, 18 (1969) (discussing conduct amounting to "deception").

This expansive and somewhat confusing language has, for obvious reasons, made N.C.G.S. § 75–1.1 a favorite cause of action. Nonetheless, the courts have consistently recognized that § 75–1.1 does not

---

761 F.2d 162, 165 (4th Cir.1985); *Johnson v. Phoenix Mutual Life Insurance Co.*, 300 N.C. 247, 262, 266 S.E.2d 610, 620 (1980); *State Ex Rel. Edmisten v. J.C. Penney Co., Inc.*, 292 N.C. 311, 315, 233 S.E.2d 895, 898 (1977).

**2.** Under the statute, a plaintiff may properly allege that a defendant's conduct was both unfair and deceptive. Alternatively, a plaintiff may proceed under the theory that a defendant only acted unfairly. *See Bailey v. LeBeau*, 79

N.C.App. 345, 352, 339 S.E.2d 460, 464, *modified on other grounds*, 318 N.C. 411, 348 S.E.2d 524 (1986) (concept of unfairness is broader, and includes concept of deception). Conduct is "unfair" when it violates established policy or when the practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. Conduct is deceptive "if it has the capacity or tendency to deceive." *Id.*

cover every dispute between two parties. The courts differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law. "Disagreement" and "tendency to deceive" are not synonymous; a plaintiff must demonstrate more than a simple disagreement or an innocent misunderstanding if the plaintiff hopes to establish a deceptive trade practice claim.

The Fourth Circuit recognized the distinction between claims of a contractual nature and claims for deceptive trade practices in *United Roasters, Inc. v. Colgate–Palmolive Co.*, 649 F.2d 985 (4th Cir.), *cert. denied*, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981). In *United Roasters*, a jury found that the defendant intentionally, and in bad faith, breached three contracts. Based on these findings, the district court held that plaintiff failed to state a claim for an unfair or deceptive trade practice. In affirming the district court, Circuit Judge Haynsworth noted:

> In a sense, unfairness inheres in every breach of contract when one of the contracting parties is denied the advantage for which he contracted, but this is why remedial damages are awarded on contract claims. If such an award is to be trebled, the North Carolina legislature must have intended that *substantial aggravating circumstances* be present.

649 F.2d at 992 (emphasis added). In further describing the types of acts and practices N.C.G.S. § 75–1.1 proscribes, the court stated that these acts or practices "are *actually deceptive or approach deception*" and that the "*deception ... [is] present at the time of the contract formation.*" *United Roasters*, 649 F.2d at 992 (emphasis added).[3]

The evidence in the present action clearly shows that plaintiff's claim failed to rise to the level of a deceptive trade practice. Plaintiff's claim, if cognizable at all, is a contract claim. Plaintiff's claim could not be that defendant committed some deception that induced her into entering the lease agreement. The allegedly deceptive representations regarding plaintiff's ability to terminate the lease occurred *after* the consummation of the lease. Stated differently, prior to defendant's allegedly deceptive representations, plaintiff, an intelligent, experienced, businesswoman, had already signed a written contract that addresses "TERMINATION" in a straightforward and conspicuous manner. Thus, put into perspective, plaintiff's claim must be that the oral statement, "you can get out of it," has a tendency to deceive despite the existence of an executed written contract that indicates a contrary agreement. The court cannot and did not accept plaintiff's assertion. Plaintiff's facts at best suggest that a modification of the written lease agreement occurred and that plaintiff, in the end, did not receive the consideration for which she bargained. This factual situation is clearly governed by contract law. Substantial aggravating circumstances are necessary to label an act as a deceptive trade practice, and plaintiff failed to demonstrate the existence of such circumstances in this case.[4]

---

**3.** Other courts have consistently distinguished between contract and deceptive practice claims. See *CF Industries, Inc. v. Transcontinental Gas Pipe Line Corp.*, 448 F.Supp. 475, 484–86 (W.D. N.C.1978); *Spear v. Daniel*, 84 N.C.App. 281, 284–85, 352 S.E.2d 441, 441–42 (1987); *Stone v. Paradise Park Homes, Inc.*, 37 N.C.App. 97, 105–06, 245 S.E.2d 801, 807, *cert. denied*, 295 N.C. 653, 248 S.E.2d 257 (1978). *See also American Craft Hosiery Corp. v. Damascus Hosiery Mills, Inc.*, 575 F.Supp. 816, 821 (W.D.N.C.1983) (suggesting that tortious interference with contract insufficient to support a § 75–1.1 violation).

**4.** The factual chronology in the present case distinguishes it from the claim presented in *Mapp v. Toyota World, Inc.*, 81 N.C.App. 421, 344 S.E.2d 297, *cert. denied*, 318 N.C. 283, 347 S.E.2d 464 (1986). In *Mapp*, the court found that "[p]laintiff's evidence in this case showed not just a breach of promise; it showed a fraudulent scheme, *i.e., a contract induced by the defendant's promise* to allow rescission of the contract by plaintiff, which promise defendant never intended to keep." 81 N.C.App. at 426, 344 S.E.2d at 301 (emphasis supplied). Defendant's conduct occurred before the execution of the contract and induced plaintiff to enter the contract. In contrast, the case herein involves representations that occurred after the execution of the contract; defendant herein did not

### (2) Causation Requirement

Under the FTC Act, the FTC need only demonstrate that a practice has a "tendency to deceive" consumers. The courts do not require a showing of actual injury because the FTC, as a governmental agency, acts to protect the consuming public. The North Carolina Act, unlike the FTC Act, allows a private plaintiff to sue. N.C.G.S. § 75–16 provides that "[i]f any person shall be injured ... by reason of any act or thing done ... in violation of [N.C.G.S. § 75–1.1], such person ... so injured shall have a right of action on account of such injury." The North Carolina courts have interpreted this language to mean that a plaintiff must show that he or she "suffered *actual injury* as a *proximate result* of defendant's deceptive" act or practice. *Pearce v. American Defender Life Insurance Co.*, 316 N.C. 461, 470–71, 343 S.E.2d 174, 180 (1986) (citing *Ellis v. Smith–Broadhurst, Inc.*, 48 N.C.App. 180, 184, 268 S.E.2d 271, 273–74 (1980)). Translating this requirement into familiar legal terminology, a plaintiff must prove actual and proximate causation.

The requirement that the plaintiff prove actual causation is probably the least understood concept in this area of the law. Litigants frequently focus on proving a deceptive act and an injury without attempting to show the concatenating link of actual causation. To prove actual causation, a plaintiff must prove that he or she detrimentally relied on the defendant's deceptive statement or misrepresentation. *Pearce*, 316 N.C. at 471, 343 S.E.2d at 180. Stated differently, the deceptive act or practice must have actually mislead or deceived the plaintiff. It is this concept that produces confusion. Plaintiffs point to the oft repeated language that "proof of actual deception is not required," *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403, and argue that they need not prove that they were "actually deceived." Arguments of this nature demonstrate a fundamental misunderstanding of what is meant by the phrase "proof of actual deception is not required."

The statement that "proof of actual deception is not required" is an attempt to separate "deceptive trade practices" from the common law tort action of "deceit." At common law, a plaintiff could recover for deceit if the plaintiff proved:

1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.

2. Knowledge or belief on the part of the defendant that the representation is false.... This element often is given the technical name of "scienter."

3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.

4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

5. Damage to the plaintiff, resulting from such reliance.

W. Keeton, *Prosser and Keeton on Torts*, § 105 (5th ed. 1984). This stringent burden of proof became too onerous in some cases, and state legislatures, including the North Carolina legislature, adopted deceptive trade practices statutes "because common law remedies had proved often ineffective." *Marshall*, 302 N.C. at 543, 276 S.E.2d at 400. As the *Marshall* opinion recounts:

> Tort actions for deceit in cases of misrepresentation involved proof of scienter as an essential element and were subject to the defense of "puffing." Proof of actionable fraud involved a heavy burden of proof, including a showing of intent to deceive.

*Id.*, 302 N.C. at 543–44, 276 S.E.2d at 400 (citations omitted).

In light of this historical perspective, it is apparent that the statement, "proof of actual deception is not required," represents a means of relaxing the common law burden of proof. The *Marshall* opinion makes clear that a plaintiff in a deceptive trade practices case need not prove "scienter" or "intent to deceive." Furthermore, *Marshall* clearly suggests that a plaintiff need not prove that a representation of "fact" occurred. The defense of "puffing," in essence, is an argument that a defendant's representation is an "opinion" as opposed

induce plaintiff to enter the lease agreement for          the LeBaron.

to a "fact." In light of this history, the North Carolina Supreme court recently stated, a plaintiff "must show only some—but not all—of the same elements essential to making out a cause of action for fraud." *Pearce*, 316 N.C. at 470, 343 S.E.2d at 180.

It is equally clear that, even with this relaxed burden of proof, a private plaintiff cannot recover in an action for a deceptive trade practice if the plaintiff is unable to prove that the deceptive practice worked. Basic legal principles dictate that a private plaintiff must show that he or she suffered an injury as a result of a defendant's acts. The plaintiff must have been deceived; plaintiff must suffer "actual injury *as a proximate result* of defendant's deceptive statement or misrepresentation." [5] *Id.*

In the present case, plaintiff presented no evidence to indicate that defendant's allegedly deceptive practice caused her injury. There was no evidence that plaintiff detrimentally relied on the statements defendant allegedly made. In other words, even if the court assumes that defendant's acts had a tendency to deceive, this plaintiff was simply not fooled or mislead. Instead, the testimony indicated that plaintiff never attempted to terminate the lease without penalty. Plaintiff never returned the car to the defendant and never notified defendant about any mileage on the car. After driving the car for over two years, plaintiff went to an unrelated automobile dealership and traded the LeBaron for a lease on a 1987 Volvo. There was no evidence that plaintiff indicated, at that time, that she need not pay the early termination penalties, and there was no evidence that plaintiff attempted to avoid paying these penalties. Indeed, it appears that plaintiff did not contact defendant at all. In this light, the court concluded that insufficient evidence existed for a reasonable jury to conclude that defendant's acts caused plaintiff injury. It seems obvious that if

plaintiff viewed defendant's oral representations as a binding promise, plaintiff would have attempted to enforce the promise.

### CONCLUSION

Plaintiff's evidence failed, as a matter of law, to show that defendant committed an act that has the tendency or capacity to deceive. At best, plaintiff presented evidence that defendant breached an oral modification to the written lease contract, and breach of contract alone is clearly not a deceptive trade practice. Furthermore, plaintiff failed to present any evidence suggesting that defendant's conduct *caused* actual damage. Even if defendant committed some act that has a tendency to deceive, plaintiff did not rely on defendant's act. In this light, the court concluded that plaintiff's claim for a deceptive trade practice fails as a matter of law. Accordingly, the court granted a directed verdict, in defendant's favor, at the trial of this action.

---

5. At the risk of being overly repetitive, the court reiterates that the standards applicable to the deceptive trade practices statute are borrowed from cases interpreting the Federal Trade Commission Act. *See Johnson*, 300 N.C. at 262, 266 S.E.2d at 622. Private rights of action do not exist under the FTC Act; the FTC brings actions to protect the general consuming public. In its capacity as a regulatory watchdog for consum-

ers, the FTC need not prove that any actual deception or actual injury has occurred. The FTC need only prove that a challenged practice has a tendency and capacity to deceive, *FTC v. Algoma Lumber Co.*, 291 U.S. 67, 81, 54 S.Ct. 315, 321, 78 L.Ed. 655 (1934), and is detrimental to the public interest. *S. Buchsbaum & Co. v. FTC*, 160 F.2d 121, 123 (7th Cir.1947).