**78**

David E. Bennett, Rhodes, Coats and Bennett, Raleigh, N.C., for plaintiff.

Stephen D. Coggins, Parker, Poe, Adams & Bernstein, Raleigh, N.C., for defendants.

ORDER

DUPREE, District Judge.

This action was filed by plaintiff Sideshow, Inc., against defendants Mammoth Records, Inc., The Sidewinders, Inc., BMG Music; Ariola Eurodisc, Inc. and Bertelsmann Music Group, Inc., alleging trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff also asserts claims pursuant to N.C.G.S. §§ 75–1.1 and 75–16 (1988), prohibiting unfair and deceptive trade practices, and the common law of unfair competition. Plaintiff seeks compensatory damages and prays that these be trebled under both the Lanham Act and the North Carolina Unfair and Deceptive Trade Practices Act (Chapter 75). The action is now before the court upon defendants' motion for judg-

**SIDESHOW, INC., Plaintiff,**

v.

**MAMMOTH RECORDS, INC., et al., Defendants.**

No. 90–214–CIV–5–D.

United States District Court, E.D. North Carolina, Raleigh Division.

Oct. 19, 1990.

ment on the pleadings pursuant to F.R. Civ.P. 12(c). Defendants seek dismissal of plaintiff's Chapter 75 count claiming that application of N.C.G.S. §§ 75–1.1 and 75–16 to this claim is unconstitutional. In the alternative, defendants assert that cases involving innocent infringement of an unregistered trademark and the facts of this case do not fall within the scope of these provisions. Because this court finds that plaintiff's claim falls outside of the legislature's intended scope of Chapter 75, defendants' motion is granted.

## I. FACTS

Plaintiff is a rock band called "Sidewinder" that is incorporated and headquartered in North Carolina. Plaintiff and its predecessors in interest have performed in nightclubs and on college campuses in the southeast and mid-Atlantic areas since 1978 under the name "Sidewinder." The name, however, has not been registered as a trademark under federal or state law. Plaintiff has appeared on both radio and television and recorded an album in 1986 which was distributed throughout a fourteen-state area. It continues to perform in the southeast and the mid-Atlantic region under the "Sidewinder" name.

Defendant, "The Sidewinders, Inc.," is an Arizona band which was formed in 1985. Initially, the band performed primarily in the southwest, but has since begun touring throughout all areas of the United States, including the southeast. To date, it has produced three recordings which have been distributed in the form of albums, tapes and compact discs. It has also appeared on television music videos. Defendant, "The Sidewinders, Inc.," entered into an exclusive recording artist contract with defendant Mammoth in 1988. Mammoth thereafter entered into a distribution contract with defendant BMG. Prior to the release of the second recording, defendants conducted a federal trademark search and found no competing registration, and therefore, went forward with performances and promotions using the "Sidewinders" name.

In February of 1990, Eric M. Levine, a director at BMG, heard a Coors Light commercial in New York featuring the plaintiff band. He contacted the responsible advertising agency demanding that the commercial cease. Coors complied when informed of the conflict. Plaintiff and defendants then attempted to negotiate regarding the use of the "Sidewinder[s]" name, but were unable to come to an agreement. Thereafter, claiming a trademark interest in the unregistered mark "Sidewinder," plaintiff filed this suit contending, *inter alia*, that defendants' use of the mark violated the Lanham Act, N.C.G.S. Chapter 75, and the common law of unfair competition.

## II. DISCUSSION

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The defendant is entitled to have a judgment entered in his favor if the pleadings, when taken as true, show that there is no genuine factual issue and that the case can be decided against the plaintiff as a matter of law. *Smith v. McDonald*, 562 F.Supp. 829 (M.D.N.C. 1983), *aff'd*, 737 F.2d 427 (4th Cir.1984), *aff'd*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985).

North Carolina General Statute § 75–1.1 (1988) states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are ... unlawful." A civil plaintiff who establishes that he has been injured by a violation of this section is entitled to a judgment "for treble the amount fixed by the verdict." N.C.G.S. § 75–16 (1988). The court has no discretion in applying this section and damages are trebled automatically. *Pinehurst, Inc. v. O'Leary Brothers Realty, Inc.*, 79 N.C. App. 51, 338 S.E.2d 918 (1986).

In construing the meaning of the statute, the court looks primarily to the intent of the legislature. *State v. Ferrell*, 300 N.C. 157, 265 S.E.2d 210 (1980). This is done by examining the language of the statute, what it sought to accomplish, its history and the surrounding circumstances at the time it was enacted. *Id.*

"Th[e] expansive and somewhat confusing language has, for obvious reasons, made N.C.G.S. § 75–1.1 a favorite cause of action." *Hageman v. Twin–City Chrysler–Plymouth, Inc.,* 681 F.Supp. 303, 306 (M.D.N.C.1988). Courts have nonetheless "consistently recognized that § 75–1.1 does not cover every dispute between two parties." *Id.* at 306–07. Likewise, since the statute and its treble damages provisions are in derogation of the common law, the section is to be strictly construed. *Pinehurst, supra.*

■ Several North Carolina cases have examined the meaning and purpose of Sections 75–1.1 and 75–16. In *Marshall v. Miller,* 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981), the North Carolina Supreme Court stated that the North Carolina legislature enacted the statute "to establish an effective private cause of action for aggrieved consumers in this State." This type of remedy was needed because the common law had proved to be ineffective. *Id.* For example, in a fraud action, plaintiff has the heavy burden of establishing both scienter and intent to deceive. Under Chapter 75, intentional wrongdoing and bad faith are not required. The parol evidence rule may likewise bar relevant evidence in a contract action. *Id.* Chapter 75 also encourages private enforcement because the availability of treble damages makes suing more feasible when dollar amounts are low. *Id.*

The court in *Skinner v. E.F. Hutton & Company, Inc.,* 314 N.C. 267, 333 S.E.2d 236 (1985), stated that the purpose of this section is to protect the consuming public. Cases involving commodities do not fall within its scope because "there exist[s] a 'pervasive' federal scheme for regulating commodities transactions." *Id.* at 274, 333 S.E.2d at 241. Additionally, a party would still be subject to a host of other legislatively imposed sanctions, above and beyond that sought in a private action. *Id. See also Bunting v. Perdue, Inc.,* 611 F.Supp. 682 (E.D.N.C.1985) (purpose of Section 75–1.1 is to protect the consuming public); *Winston Realty Company, Inc. v. G.H.G., Inc.,* 314 N.C. 90, 95, 331 S.E.2d 677, 680

(1985) (purpose is "to create a new, private cause of action for aggrieved consumers since traditional common law remedies were often deficient").

The fact that Chapter 75 is a consumer protection statute does not necessarily mean that a consumer is the only possible plaintiff. *Harrington Manufacturing Company, Inc. v. Powell Manufacturing Company,* 38 N.C.App. 393, 248 S.E.2d 739 (1978), *cert. denied,* 296 N.C. 411, 251 S.E.2d 469 (1979) (plaintiff sued its competitor). However, there have been several areas in which the courts have found the alleged wrongful acts of defendant to be beyond the statute's scope. *See, e.g., Bunting, supra* (section not applicable to dispute arising out of a service contract to raise chickens); *Skinner v. E.F. Hutton & Company, Inc., supra* (securities transactions outside the scope of Section 75–1.1); *Bache Halsey Stuart, Inc. v. Hunsucker,* 38 N.C.App. 414, 248 S.E.2d 567 (1978), *cert. denied,* 296 N.C. 583, 254 S.E.2d 32 (1979) (Section 75–1.1 not applicable to commodities transactions); *Buie v. Daniel International Corporation,* 56 N.C.App. 445, 448, 289 S.E.2d 118, 119 (1982) (section not applicable to action of employee against employer because these "practices fall within the purview of other statutes adopted for that express purpose").

■ Sections 75–1.1 and 75–16 were not intended by the North Carolina legislature to apply to cases involving innocent and unintentional infringement of unregistered trademarks. First, as explained above, Chapter 75 is a consumer protection statute and its primary purpose is to aid consumers, especially those who have no other remedies. The state statute was enacted to supplement the Federal Trade Commission Act which confers no private right of action, although the language is practically identical. *Marshall v. Miller, supra.*

Plaintiff in this case is not an injured consumer and has several other adequate remedies. Section 43(a) of the Lanham Act provides:

(a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce

any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a).

This demonstrates a pervasive federal scheme in regulating trademarks. Additionally, plaintiff's burden under this section is no greater than if it proceeded under Section 75–1.1.

The Lanham Act also makes treble damages available on a discretionary basis. 15 U.S.C. § 1117. If the infringement is not intentional, the court is to award an amount it "shall find to be just, according to the circumstances of the case." *Id.* at Section 1117(a). This, among other things, could consist of profits, treble damages, and even attorney's fees in exceptional cases. *Id.* at Section 1117(b).

Plaintiff here, therefore, has a remedy to recover all of its losses, including treble damages, if appropriate, without the need for Chapter 75. Moreover, the North Carolina common law remedies for infringement remain available as well. *See, e.g., Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145 (4th Cir.1987); *Yellow Cab Company v. Creasman,* 185 N.C. 551, 117 S.E. 787 (1923).

Second, the courts must use common sense when interpreting a statute so as not to produce an absurd result. *Woodhouse v. Board of Commissioners of Town of Nags Head,* 299 N.C. 211, 261 S.E.2d 882

(1980). Chapter 80 of the North Carolina General Statutes governs the registration and infringement of trademarks in North Carolina. It creates a cause of action for infringement of registered marks. The general measure of damages is "profits or damages." N.C.G.S. § 80–11 (1986). North Carolina General Statute § 80–12 (1986) provides for a penalty as well, "of not less than two hundred dollars ($200.00) and not more than one thousand dollars ($1,000)." The penalty, however, is only available if defendant committed the acts of infringement "with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive." *Id.* at Section 80–11.

The North Carolina legislature, therefore, has directly addressed infringement of registered trademarks. There are no treble damage provisions, but rather a penalty if the infringement was willful. There is no penalty if the infringement was innocent. It would not be logical to hold that the legislature intended mandatory treble damages for an innocent infringement of an unregistered mark, while only intending a $200 to $1,000 penalty for deliberate and intentional infringement of a registered mark. This would allow far greater damages for the holder of an unregistered trademark than the holder of a registered one, and far greater liability for an innocent infringer than an intentional one. This court refuses to hold that the North Carolina legislature intended this result. This, of course, does not in any way address the application of Sections 75–1.1 and 75–16 to deliberate infringement. *See Polo Fashions, Inc. v. Craftex, supra* (treble damages for intentional infringement upheld under Chapter 75).

For the above reasons, N.C.G.S. §§ 75–1.1 and 75–16 do not apply to the innocent infringement of an unregistered trademark. Plaintiff's complaint, even if taken as true, therefore, would not entitle it to relief.

 Even if Chapter 75 were found to be applicable, however, defendants would still prevail. Plaintiff's allegations in this case

at most amount to a claim for unintentional infringement. To recover treble damages under Section 75–1.1, "substantial aggravating circumstances [must] be present." *Hageman v. Twin–City Chrysler–Plymouth, Inc., supra,* at 307. *See also Bartolomeo v. S.B. Thomas, Inc.,* 889 F.2d 530, 535 (4th Cir.1989) (substantial aggravating circumstances required to "justify the extraordinary treble damages recovery"); *General United Company v. American Honda Motor Company, Inc.,* 618 F.Supp. 1452 (W.D.N.C.1985) (aggravating circumstances required to constitute a violation as a matter of law). There are no allegations in plaintiff's complaint of any aggravating circumstances and plaintiff has not even alleged deliberate infringement. Therefore, even if the allegations were true, the claim does not contain sufficient aggravating circumstances to fall within the scope of Chapter 75.

### III. CONCLUSION

Based on the foregoing, the defendants' motion for judgment on the pleadings is granted and Count III of plaintiff's claim is dismissed. The allegations in the complaint, taken as true and in the light most favorable to the plaintiff, do not support a claim under the North Carolina Unfair and Deceptive Trade Practices Act. Having determined that defendants' conduct falls outside the scope of the Act and that plaintiff failed to allege sufficient aggravating circumstances to trigger the Act, the court need not address the constitutional issues raised by defendants.

SO ORDERED.