Global Textile All., Inc. v. TDI Worldwide, LLC, 2018 NCBC 103.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 7304

GLOBAL TEXTILE ALLIANCE,
INC.,

            Plaintiff,

     v.

TDI WORLDWIDE, LLC, DOLVEN
ENTERPRISES, INC., TIMOTHY
DOLAN, individually and in his
capacity as an officer, shareholder,
and director of Dolven Enterprises,
Inc. and an officer and owner of TDI
Worldwide, LLC: JAMES DOLAN,
individually and in his capacity as an
officer, shareholder, and director of
Dolven Enterprises, Inc., STEVEN
GRAVEN, individually and in his
capacity as an officer, shareholder,
and director of Dolven Enterprises,
Inc., RYAN GRAVEN, individually
and in his capacity as an officer,
shareholder, and director of Dolven
Enterprises, Inc., GARRETT
GRAVEN, individually, GFY
INDUSTRIES LIMITED,GFY,
LIMITADA de CAPITAL VARIABLE,
GFY COOPERATIVE, U.A., and 上海
冠沣源贸易有限公司 a/k/a GFY SH,

            Defendants.

**OPINION AND ORDER ON
DEFENDANT GARRETT GRAVEN'S
MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

THIS MATTER comes before the Court on Defendant Garrett Graven's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"; ECF No. 265).

THE COURT, having considered the Motion, the briefs in support of and in opposition to the Motion, the arguments of counsel at the hearing, and other appropriate matters of record, concludes that the Motion should be GRANTED, in part, and DENIED, in part, as set forth below.

*Hagan Barrett & Langley PLLC, by J. Alexander S. Barrett and Kurt A. Seeber for Plaintiff Global Textile Alliance, Inc.*

*Morningstar Law Group, by Shannon R. Joseph and Jeffrey L. Roether for Defendant Garrett Graven.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Eric M. David, Brian C. Fork, and Shepard D. O'Connell for Defendant James Dolan.*

*James, McElroy & Diehl, P.A., by Fred B. Monroe and Carl M. Short III for Defendants TDI Worldwide, LLC and Timothy Dolan.*

*K&L Gates LLP, by A. Lee Hogewood III, John R. Gardner, and Matthew T. Houston for Defendants Dolven Enterprises, Inc. and Ryan Graven.*

*Ellis & Winters LLP, by Jonathan A. Berkelhammer, Steven A. Scoggan, and Scottie Forbes Lee for Defendant Steven Graven.*

McGuire, Judge.

## FACTUAL AND PROCEDURAL BACKGROUND

1. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. N.C.G.S. § 1A-1, Rule 12(b)(6) (hereinafter, the North Carolina Rules of Civil Procedure will be referred to as "Rule(s)"). The Court only recites those facts included in the Complaint that are relevant to the Court's determination of the Motion.[1] *See, e.g.*, *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

*A. Parties Relevant to this Motion*

2. Plaintiff Global Textile Alliance, Inc. ("Plaintiff") is a North Carolina corporation with its principal place of business in Rockingham County, North Carolina. Plaintiff is in the business of providing fabrics, mattress ticking, covers,

---

[1] The facts herein are drawn from the Second Amended Complaint ("SAC"). (ECF No. 261.)

and other textiles to the bedding, upholstery, and home furnishings industries. (2d Am. Compl., ECF No. 261, at ¶ 1.)

3. Plaintiff was founded in 2001 by Luc Tack ("Tack"), a Belgian entrepreneur, and Defendants Timothy Dolan ("Timothy") and Steven Graven ("Steven"). Tack provided the funding to start Plaintiff, and Timothy incorporated Plaintiff and transferred all of its shares to Tack in the fall of 2001. (*Id.* at ¶ 21.) Since that time, Tack has been the sole shareholder of Plaintiff. (*Id.*) Until April 2016, Timothy served as Plaintiff's CEO and as a director, and Steven served as Plaintiff's Executive Vice President and as a director. (*Id.* at ¶¶ 4, 6.)

4. Defendant Garrett Graven ("Garrett") is the son of Steven and the brother of Defendant Ryan Graven ("Ryan"). (*Id.* at ¶ 8.) Garrett was employed by Plaintiff from February of 2012 until on or about February 21, 2017. (*Id.*)

*B. Plaintiff's Business and the Creation of GFY and Dolven*

5. Plaintiff's business is "highly competitive," and Plaintiff "build[s] and maintain[s] close relationships with customers, develop[s] products with them, and serv[es] their particular needs." (*Id.* at ¶ 24.) Plaintiff is familiar with each customer's requirements and needs, technical parameters, manufacturing standards and capabilities, and buying habits and volumes. (*Id.* at ¶ 26.)

6. Plaintiff uses third-party vendors to provide certain products and services integral to its manufacturing of its products. Plaintiff contracts with third-party fabric mills to manufacture some of its fabrics. Plaintiff also contracts with "cut-and-sew" operations to further process the fabric that Plaintiff manufactures

into final products for its customers. Plaintiff uses an "extremely selective" process to identify qualified third parties, a process that requires significant amounts of time and money. (*Id.* at ¶ 29.) The third-party fabric mills and cut-and-sew operations are located primarily in China.

7.    In or around 2005, Plaintiff hired Ryan to set up an office for Plaintiff in China. Plaintiff initially did its sourcing in China through a Wholly Owned Foreign Enterprise ("WOFE") named Paradise, which was and is owned by Luc Tack. (*Id.* at ¶ 36.) In or about October of 2010, Plaintiff created another WOFE called Guanteng ("GTA Asia"). Ryan became the legal representative of GTA Asia, and he was placed in charge of GTA Asia as Director of Asia Operations. (*Id.*) Ryan, however, reported to Timothy, who served as "head of GTA Asia's operations," and Ryan's control over Plaintiff's operations in Asia was "subject to the final authority of Timothy." (*Id.* at ¶ 37.) Ryan was responsible for overseeing Plaintiff's operations in Asia, including identifying qualified and reliable Chinese fabric mills and cut-and-sew vendors for Plaintiff to use and subsequently managing the vendors' work for Plaintiff. (*Id.* at ¶ 35.) Through GTA Asia, Plaintiff invested "significant amounts of time and money" to identify, select, and develop relationships with Chinese vendors capable of providing high-quality, reliable products and services for Plaintiff. (*Id.* at ¶¶ 40–41.)

8.    On or about May 4, 2009, Timothy, Steven, Ryan, and Timothy's brother, James Dolan, founded GFY Industries Limited ("GFY"), a Chinese company, using Plaintiff's offices, employees, capital, and other assets. (*Id.* at ¶ 48.) Steven claims that GFY was created to provide "one company to manage cut-and-sew facilities,

operations, logistics, quality control, and product in-flow and out flow." (*Id.* at ¶ 50.) Ryan stated that he founded GFY to "manage the sourcing, quality and servicing of [cut-and-sew] products." (*Id.*) Timothy, Steven, and Ryan did not disclose the creation of, or their ownership interests in, GFY to Luc Tack. (*Id.* at ¶¶ 68–69.)

9. Plaintiff alleges that GFY "went into direct competition" with Plaintiff. (*Id.* at ¶ 51.) GFY purchased fabric from Plaintiff, which GFY would then send to third-party cut-and-sew vendors in China to make products for Plaintiff's customers. (*Id.* at ¶ 65.) Plaintiff alleges that "[t]here was no reason that [Plaintiff] could not have directly sourced its fabrics to the third-party cut-and-sew operators, as it had done for many years." (*Id.*)

10. In August of 2013, Timothy, James Dolan, Steven, and Ryan created Dolven Enterprises, Inc. ("Dolven,") each owning a twenty-five percent interest in Dolven. (*Id.* at ¶ 77.) Dolven owns, manages, and controls GFY. (*Id.* at ¶ 9.) Dolven and GFY have continued GFY's business and "[are] engaged in sourcing fabrics, cutting and sewing of fabrics, and providing other services in the bedding and fabric industries." (*Id.* at ¶ 3.) Timothy, Steven, and Ryan did not disclose the creation of, or their ownership interests in, Dolven to Luc Tack.

11. Plaintiff alleges that Timothy, Steven, and Ryan created and operated GFY and Dolven for the purpose of diverting business from Plaintiff and usurping corporate opportunities belonging to Plaintiff. (*Id.* at ¶¶ 47–49, 51, 73, 77, and 82.)

*C. Garrett's Employment with Plaintiff and Alleged Misconduct*

12.     In 2012, Plaintiff hired Ryan's brother, Garrett, to replace Ryan as Director of Asia Operations and legal representative.  (*Id.* at ¶ 38.)  However, Ryan remained employed with Plaintiff, and Garrett reported to Ryan and Timothy.  (*Id.* at ¶ 38.)  Garrett held this position until August 2015. (*Id.*)  Garrett was not an officer or director of Plaintiff.  (*Id.* at ¶ 46.)  Garrett has no ownership interest in, and was not an officer or director of GFY or Dolven.

13.     Plaintiff alleges that Garrett "agreed to cooperate and act with [the other Defendants] to carry out the scheme to divert business from [Plaintiff] and engage in the conflict of interest transactions and diversions of corporate opportunities as more particularly alleged" in the SAC. (*Id.* at ¶ 134.)  For example, Plaintiff alleges that when Garrett began his duties in August of 2012, he permitted GFY to continue to use Plaintiff's office space and use Plaintiff's employees and resources. (*Id.* at ¶ 56.)  Plaintiff further alleges that Garrett misappropriated funds for the benefit of GFY by paying office maintenance with Plaintiff's funds, establishing a business relationship with a United States supplier of non-woven fabrics exclusively for GFY, and providing exclusive discounts on Plaintiff's fabric and preferential sales terms to GFY.  (*Id.* at ¶¶ 59, 61–62.)  Garrett was aware of the ownership and connections of GFY and later Dolven, but failed to disclose the conflict of interest involved with these transactions to Luc Tack.  (*Id.* at ¶¶ 56, 60, 62–64, 68, 84, 91–93.)

14. Additionally, Garrett "actively participated directly with Defendants Timothy Dolan and Steven Graven in the diversion of [Plaintiff's] business . . . by, among other things, deciding on what business would be diverted from [Plaintiff] for GFY and what prices and terms would be afforded by [Plaintiff] to GFY." (*Id.* at ¶ 46.)

15. Additionally, at some unspecified time, Garrett asked Timothy, Steven, and Ryan what he should tell Luc Tack about their ownership interest in GFY and Dolven and the business relationships between Plaintiff and GFY and Dolven. (*Id.* at 62.) Garrett was instructed that "he should tell Luc Tack what he knew only if asked." (*Id.*) When Garrett subsequently met with Luc Tack, Garrett "[kept] secret from Luc Tack the ownership of GFY and Dolven, the preferential sales by [Plaintiff] to GFY and Dolven, the diversion of [Plaintiff]'s business to GFY and Dolven, the utilization by GFY and Dolven of [Plaintiff]'s personnel, money, credit and facilities and the work he had done for and on behalf of GFY, Dolven … while head of GTA Asia." (*Id.*)

### D. Relevant Procedural History

16. On August 15, 2017, Plaintiff initiated this lawsuit by filing a Verified Complaint. (ECF No. 4.) On October 25, 2017, Garrett filed his first Motion to Dismiss ("First Motion to Dismiss"; ECF No. 101). On December 11, 2017, before the briefing on the First Motion to Dismiss closed, Plaintiff moved to amend its Verified Complaint ("First Motion to Amend"; ECF No. 136). On December 14, 2017, the Court granted Plaintiff's First Motion to Amend. (Order Granting First Mot. to

Amend, ECF No. 147.) On December 14, 2017, Plaintiff filed the amended complaint (ECF No. 149), rendering Garrett's First Motion to Dismiss moot.

17. On January 30, 2018, Garrett filed a motion to dismiss Plaintiff's amended complaint. (ECF No. 169.) The briefing period ended, and on March 12, 2018, Plaintiff again sought leave to amend the complaint and file the SAC. (ECF No. 224.) On April 6, 2018, the Court granted in part Plaintiff's motion to further amend its complaint. (ECF No. 259.) Subsequently, the Court denied Garrett's motion to dismiss Plaintiff's amended complaint as moot on April 9, 2018. (ECF No. 260.)

18. In the SAC, Plaintiff makes the following claims against Garrett and other Defendants: actual and constructive fraud (Third Claim for Relief); conspiracy (Fourth Claim for Relief); common law unfair competition/business conversion (Sixth Claim for Relief); unfair and deceptive trade practices in violation of the North Carolina Unfair Trade Practice Act, N.C.G.S. § 75-1.1 ("UDTPA") (hereinafter, the North Carolina General Statutes will be referred to as "G.S.") (Seventh Claim for Relief); breach of fiduciary and other duties (Eighth Claim for Relief); disgorgement of compensation during periods of faithlessness (Ninth Claim for Relief); constructive trust (Tenth Claim for Relief); and a motion for preliminary and permanent injunction (Twelfth Claim for Relief).

19. On April 20, 2018, Garrett filed the Motion, and an accompanying brief in support. (G. Graven's Br. Supp. Mot. Dismiss Pl.'s Second Am. Compl., ECF No. 266.) Plaintiff filed its brief in opposition to the Motion on May 17, 2018, (Pl.'s Br.

Opp. to G. Graven Mot. Dismiss, ECF No. 295), and Garrett filed his reply brief in support of the Motion on May 30, 2018 (G. Graven's Reply Br. Supp. Mot. Dsimiss, ECF No. 296). On June 27, 2018, the Court held a hearing on the Motion. The Motion is now ripe for determination.

ANALYSIS

A.    *Standard of review*

20.    Garrett moves to dismiss Plaintiff's claims against him under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

21.    In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the [C]omplaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). North Carolina is a notice pleading state. *See, e.g.*, *Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 646, 762 S.E.2d 477, 486 (2014)). "Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought." *Id.*

22.    Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or]

(3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). In deciding a motion to dismiss, the Court must construe the Complaint liberally and accept all well-pleaded allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (internal citation and quotations omitted).

B.   *Breach of Fiduciary Duty and Constructive Fraud*

23.   Plaintiff makes claims for constructive fraud (ECF No. 261, at ¶¶ 125–32) and breach of fiduciary duty (*Id.* at ¶¶ 156–60) against Garrett. Plaintiff does not allege Garrett was an officer or director of Plaintiff, but instead claims that he owed Plaintiff fiduciary duties because of the position Garrett held as head of operations and legal representative for GTA Asia. Garrett argues that as a mere employee of GTA Asia, even one with management responsibility, he did not owe fiduciary duty to Plaintiff. (ECF No. 266, at pp. 6–7.)

24.   "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651–52, 548 S.E.2d 704, 707 (2001). A claim for constructive fraud also requires a plaintiff to allege that the defendant owes the plaintiff a fiduciary duty. *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620, 730 S.E.2d 763, 767 (2012).

A fiduciary relationship may arise when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence[.]" *Dalton*, 353 N.C. at 651–52, 548 S.E.2d at 707 (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (internal quotations omitted). Such a relationship "extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed in one side, and *resulting domination and influence on the other*." *Id.* at 652, 548 S.E.2d at 707–08 (quoting *Abbitt*, 201 N.C. at 598, 160 S.E. at 906). "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Lockerman v. South River Elec. Membership Corp.*, 794 S.E.2d 346, 352, 2016 N.C. App. LEXIS 1234, at *11 (2016) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008)) (internal quotations omitted).

25. North Carolina's courts have consistently held that an employer-employee relationship is not a fiduciary one, even where the employee has significant management authority, absent some allegation that the employee exercised dominance and control over his employer. *See Austin Maint. Constr., Inc. v. Crowder Constr. Co.*, 224 N.C. App. 401, 410, 742 S.E.2d 535, 542 (2012) (finding no breach of fiduciary duty because "any confidence that Plaintiff reposed in [employee] consisted of nothing more than relying on him to competently perform his assigned duties"); *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708 (quoting *King v. Atl. Coast Line R.R. Co.*,

157 N.C. 44, 62–63, 72 S.E. 801, 808 (1911)) ("Under the general rule, 'the relation of employer and employee is not one of those regarded as confidential.'"); *Reichhold Chems., Inc. v. Goel*, 146 N.C. App. 137, 155, 555 S.E.2d 281, 292 (2001) (finding no fiduciary duty for company vice president because "[a] managerial position alone does not demonstrate the requisite domination and influence on the other"); *Artistic S. Inc. v. Lund*, 2015 NCBC LEXIS 113, at *41–43 (N.C. Super. Ct. Dec. 9, 2015) (dismissing fiduciary duty claim against salesperson, noting that allegations of soliciting clients and collecting money did not support finding that employee "held all the cards"); *Allegis Grp., Inc. v. Zachary Piper LLC*, 2013 NCBC LEXIS 12, at *32 (N.C. Super. Ct. Feb. 25, 2013) (holding that "basic management responsibilities" do not support fiduciary relationship); *Battleground Veterinary Hosp., P.C. v. McGeough*, 2007 NCBC LEXIS 33, at *16 (N.C. Super. Ct. Oct. 19, 2007) ("Even when an employee is entrusted with substantial managerial authority, a fiduciary relationship will not exist absent evidence that such authority led to the employer being subjugated to the 'improper influences or domination of [its] employee.'" (citation omitted)).

26. "Where an employee is neither an officer nor a director, extraordinary circumstances are necessary to impose a fiduciary duty arising out of the employment relationship." *Southeast Air Charter, Inc. v. Stroud*, 2015 NCBC LEXIS 82, at *16 (N.C. Super. Ct. Aug. 17, 2015) (citing *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708). These "extraordinary circumstances" occur when an employer is "subjugated to the improper influences or domination of his employee." *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708; *see also DSM Dyneema, LLC v. Thagard*, 2015 NCBC LEXIS 50, at

\*21–22 (N.C. Super. Ct. May 12, 2015) (holding that the plaintiff failed to allege "the extraordinary or special type of employer-employee relationship that gives rise to a fiduciary duty" because the facts pleaded "failed to allege that Thagard enjoyed the sort of domination or influence over DSM that our courts have found necessary to create a fiduciary duty").

27. Plaintiff alleges only that Garrett was an employee of GTA Asia, albeit one with substantial managerial authority and knowledge of Plaintiff's operations in Asia. The pleaded facts do not show that Garrett possessed the type of domination and influence over Plaintiff to create fiduciary duties on Garrett. Rather, the SAC alleges that Garrett had significant oversight of GTA Asia's operations, but was supervised by and answered to Ryan and Timothy. (ECF No. 261, at ¶¶ 38, 40, 43.) In fact, Plaintiff alleges that Timothy "had overall managerial responsibility and operational control over all aspects of [Plaintiff]'s day to day business, including sales and manufacturing" and "also served as [Plaintiff]'s head of Asia Operations from the inception of those operations in 2010 through April 2016," and that Timothy and Steven "were entirely responsible for and did oversee the entire day-to-day operations and work of [Plaintiff's] business," which included GTA Asia. (*Id.* at ¶¶ 4, 22.) Furthermore, the SAC does not allege that Luc Tack placed special confidence in Garrett, or even that Garrett had any regular contact with any of Plaintiff's officials other than Tim Dolan and Ryan Graven. The allegations do not support a claim that Plaintiff was "subjugated to the improper influences or domination of" Garrett. *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708.

28. The facts as alleged in the SAC do not support Plaintiff's allegation that Garrett owed Plaintiff a fiduciary relationship. Accordingly, Garrett's Motion to Dismiss Plaintiff's claims for constructive fraud and breach of fiduciary duty should be GRANTED.

C. *Actual fraud*

29. As a third claim for relief, Plaintiff alleges that Garrett, along with the other Defendants, committed fraud by "engag[ing] in a fraudulent scheme to both divert business and money from [Plaintiff] and carry on business for Dolven and the Dolven Affiliates to [Plaintiff]'s detriment." (ECF No. 261, at ¶ 126.) Specifically, Plaintiff alleges that Garrett "had fiduciary and other obligations to . . . make full disclosure to [Plaintiff] of all pertinent information" about the diversions of business from Plaintiff to Dolven and GFY, but did not do so. (*Id.* at ¶¶ 131–32.)

30. The elements of a claim for actual fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damages to the injured party." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (internal citation and quotations omitted). If a claim of fraud is based on concealment of a material fact, the plaintiff must also allege that the party allegedly committing the fraud had a duty to speak. *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976); *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at \*8 (N.C. Super. Ct. June 18, 2007). A duty to speak and disclose a material fact arises where

> (1) a fiduciary relationship exists between the parties to the transaction; (2) there is no fiduciary duty and one party

has taken affirmative steps to conceal material facts from the other; and (3) there is no fiduciary relationship and one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence.

*Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (internal citations and quotations omitted).

31. Plaintiff does not argue that Garrett had a duty to disclose other than a duty arising from his alleged fiduciary duties to Plaintiff. (ECF No. 295, at pp. 12–16.) However, the Court has already concluded that Garrett did not owe Plaintiff a fiduciary duty. Nevertheless, Plaintiff alleges that Garrett was instructed not to disclose what he knew about GFY and Dolven to Luc Tack, and that Garrett did not disclose the information in his meeting with Luc Tack. (ECF No. 261, at 62.) The Court concludes this allegation is sufficient to support a claim that Garrett affirmatively concealed from Luc Tack material facts of which Tack did not have knowledge and survive dismissal. Accordingly, Garrett's motion to dismiss Plaintiff's claim for actual fraud should be DENIED.

D. *Civil conspiracy*

32. Plaintiff claims that Garrett committed civil conspiracy by "agree[ing] to cooperate and act" with the other Defendants "to carry out the scheme to divert business from [Plaintiff]." (ECF No. 261, at ¶ 134.) Civil conspiracy is not an independent cause of action in North Carolina. Rather, liability for civil conspiracy must be alleged in conjunction with an underlying claim for unlawful conduct. *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002). To state a claim

for civil conspiracy, a plaintiff must allege: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011) (internal citations and quotations omitted).

> In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts. The charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances the acts and conduct of one might be admissible against all.

*Shope v. Boyer*, 268 N.C. 401, 405, 150 S.E.2d 771, 773–74 (1966); *see also GoRhinoGo, LLC v. Lewis*, 2011 NCBC LEXIS 39, at *20 (N.C. Super. Ct. Sept. 9, 2011) ("Having joined the conspiracy, [two individual defendants] became exposed to liability with [co-defendant] and any other co-conspirators for damages caused by any act in furtherance of the common scheme."). The gravamen of an action for civil conspiracy "is the resultant injury, and not the conspiracy itself." *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984); 16 Am. Jr. 2d *Conspiracy* § 50 (2017).

33. Garrett seeks dismissal of the civil conspiracy claim, arguing that Plaintiff has not pleaded facts supporting the allegation of an agreement between Garrett and the other defendants except to assert that Garrett did not speak up in opposition to the diversion. (ECF No. 265, at pp. 19–20.) In *Global Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 57 (N.C. Super. Ct. June 5, 2018), the Court found that Plaintiff had sufficiently stated a claim for conspiracy against James

Dolan ("James"), Garrett's co-defendant, by alleging that he and other defendants had entered into an agreement to "divert business and opportunities from Plaintiff," and that the co-conspirators committed wrongful acts furthering the agreement. *Id.* at *25–26; *see also Safety Test & Equip. Co. v. Am. Safety Util. Corp.*, 2015 NCBC LEXIS 40, at *48 (N.C. Super. Ct. Apr. 23, 2015) ("[I]t is difficult to dismiss a conspiracy claim summarily because the elements of a conspiracy claim are broadly stated."). The same allegations have been made in the SAC regarding Garrett. In addition, as discussed above, Plaintiff alleges that Garrett, at least tacitly, agreed with Timothy, Steven, and Ryan to conceal information from Luc Tack in support of the alleged wrongful acts underlying the conspiracy. The allegations are minimally sufficient to support the claim for conspiracy.

34. Plaintiff has adequately stated a claim for civil conspiracy against Garrett. Garrett's motion to dismiss Plaintiff's claim for civil conspiracy against Garrett should be DENIED.

E. *Unfair and Deceptive Trade Practices*

35. Plaintiff next claims that all Defendants, including Garrett, committed unfair or deceptive trade practices in violation of the UDTPA. (ECF No. 261, at ¶¶ 150–55.) Plaintiff does not specifically state what actions by Garrett constitute unfair or deceptive trade practices, but instead alleges only that "Defendants' acts and omissions as alleged [in the SAC] constitute unfair and deceptive trade acts or practices." (Id. at ¶ 152.)

36.    To prove a violation of UDTPA, a plaintiff must show that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711.  An act or practice is considered unfair when it is offensive to public policy or when it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *Pinehurst, Inc. v. O'Leary Bros. Realty, Inc.*, 79 N.C. App. 51, 59–60, 338 S.E.2d 918, 923 (1986) (internal citations and quotations omitted).  An act or practice is considered deceptive if it has the capacity or tendency to deceive.  *Id.* at 60, 338 S.E.2d at 923.  Whether an act or practice is unfair or deceptive is ultimately a question of law for the Court. *Songwooyarn Trading Co. v. Sox Eleven, Inc.*, 213 N.C. App. 49, 56, 714 S.E.2d 162, 167 (2011).

37.    Fraudulent conduct can, under appropriate circumstances, support a claim for unfair or deceptive trade practices.  *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 470, 343 S.E.2d 174, 180 (1986); *Bhatti v. Buckland*, 328 N.C. 240, 243, 400 S.E.2d 440, 442 (N.C. 1991).  Here, Plaintiff has alleged a claim for fraud against Garrett based on his failure to disclose certain information to Luc Tack.  Plaintiff also alleges that Garrett's fraudulent conduct was in support of concealing alleged diversions of corporate opportunities and other misconduct that benefitted Dolven and GFY, both of whom are market participants along with Plaintiff in the bedding and upholstery industry.  Therefore, Plaintiff has sufficiently alleged that

the conduct was in or affecting commerce and Garrett's motion to dismiss should be DENIED.

F.    *Common law unfair competition/business conversion*

38.    Plaintiff also claims that all Defendants, including Garrett, engaged in common law unfair competition and business conversion.  (ECF No. 261, at ¶¶ 144–49.)  Plaintiff alleges that the Defendants "conduct was unfair and designed to handicap [Plaintiff] to the benefit of the . . . Defendants.  Such conduct is unethical and designed to misappropriate [Plaintiff]'s commercial competitive advantage obtained through years of time, money and labor."  (*Id*. at ¶ 145.)  Plaintiff claims Defendants "converted [Plaintiff]'s business and Trade Secrets."  (*Id*. at ¶ 144.)

39.    A claim for unfair competition seeks to protect "a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money."  *Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 749, 488 S.E.2d 234, 240 (1997).  Conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights."  *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000) (internal citations and quotations omitted).  Plaintiff's claims for common law unfair competition and business conversion are both based on allegations that the defendants diverted Plaintiff's business to, and used Plaintiff's trade secrets for the benefit of, Dolven and GFY.  Accordingly, the Court construes Plaintiff's claims for common law unfair competition and business conversion as a single claim.  *See*

*Superior Performers, Inc. v. Meaike*, No. 1:13CV1149, 2014 U.S. Dist. LEXIS 158862, at *26 (M.D.N.C. Nov. 10, 2014) ("The allegations of wrongdoing, however, as to both Plaintiff's claim for unfair competition and business conversion are the same. Therefore, the court will address the torts for unfair competition and business conversion together.").

40. Courts have recognized that a claim for common law unfair competition is analyzed the same way as a claim for unfair or deceptive trade practices under G.S. § 75-1.1. *See BellSouth Corp. v. White Directory Publishers, Inc.*, 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999) ("The standard which a plaintiff must meet to recover on an unfair competition claim under the common law is not appreciably different [from a claim for unfair or deceptive trade practices]."); *Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F. Supp. 2d 718, 721 n.1 (M.D.N.C. 2012); *Global Textile All., Inc., LLC*, 2018 NCBC LEXIS 57, at *20–21.

41. The Court has determined that the claim for unfair or deceptive trade practices against Garrett survives dismissal to the extent it is based on Garrett's alleged fraud, and concluded that the alleged fraud was in furtherance of the diversion of business and opportunities from Plaintiff to Dolven and GFY. Therefore, to the extent Plaintiff's claim for unfair competition is based on Garrett's alleged fraudulent conduct, the allegations support the claim for unfair competition and business conversion and the claim is not subject to dismissal at this stage.

42. To the extent Plaintiff claims that the defendants converted Plaintiff's trade secrets, however, the facts pleaded do not support an allegation that Garrett

was involved in the conversion of trade secrets, and that part of the claim should be dismissed.

43. In conclusion, to the extent Garrett's Motion seeks dismissal of Plaintiff's claims for common law unfair competition and business conversion based on Garrett's alleged fraudulent conduct, it should be DENIED. But, to the extent the Motion seeks dismissal of Plaintiff's claims for common law unfair competition and business conversion based on Garrett's alleged conversion of Plaintiff's trade secrets, it should be GRANTED.

G. *Constructive trust*

44. Plaintiff alleges that it is entitled to the equitable remedy of a constructive trust "with respect to all money and other property received by" Garrett and the other defendants as a result of their "unlawful conduct." (ECF No. 261, at ¶ 165.)

45. A "claim" for a constructive trust is an equitable remedy used to prevent unjust enrichment acquired through "fraud, breach of duty or some other circumstance making it inequitable for [defendant] to retain [the property]." *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970). Thus, a constructive trust is not an independent cause of action and requires the "common, indispensable element" of "some fraud, breach of duty or other wrongdoing by the holder of the property." *Id.* at 212, 171 S.E.2d at 882. A constructive trust typically arises "out of the existence of fraud, actual or presumptive – usually involving the violation of a confidential or fiduciary relation – in view of which equity transfers the

beneficial title to some person other than the holder of the legal title." *Leatherman v. Leatherman*, 297 N.C. 618, 621–22, 256 S.E.2d 793, 795–96 (1979) (quoting *Bowen v. Darden*, 241 N.C. 11, 13–14, 84 S.E.2d 289, 292 (1954)).

46. Plaintiff does not allege that Garrett was a shareholder or held an ownership interest in Dolven, GFY, or the other Defendant companies, or that he personally benefitted from diversions of Plaintiff's business or corporate opportunities. Plaintiff has not alleged that Garrett obtained title to any property belonging to Plaintiff, and has not alleged a basis for imposing a constructive trust over Garrett. Therefore, Garrett's motion to dismiss Plaintiff's claim for a constructive trust against Garrett should be GRANTED.

H. *Disgorgement of compensation*

47. Plaintiff asserts a claim titled "Disgorgement of Compensation During Periods of Faithlessness" against Garrett, Timothy, Steven, and Ryan. (ECF No. 261, at ¶¶ 161–63.) Plaintiff claims that Garrett was paid a "substantial salary and compensation" while he was "diverting business from [Plaintiff] . . . and engaging in conflicts of interest transactions." (*Id.* at ¶ 162.) Plaintiff claims that, "[i]n equity and good conscience," Garrett should be compelled to disgorge the compensation and benefits he received during the period in which he allegedly violated his "fiduciary and other duties" owed to Plaintiff. (*Id.* at ¶ 163.)

48. As with a constructive trust, a request for "disgorgement of compensation" would be considered a remedy and not a cause of action. *See Sara Lee Corp. v. Carter*, 129 N.C. App. 464, 472, 500 S.E.2d 732, 737 (1998) (allowing an

employer to recover as damages compensation and benefits paid to an employee while the employee was breaching his fiduciary duty).

49.     Plaintiff has alleged that it is entitled to a disgorgement of compensation because Garrett breached his "fiduciary and other duties" owed to Plaintiff.  However, the Court has already found that Garrett owed no fiduciary duty to Plaintiff.  Also, to the extent that Plaintiff seeks to base the request for disgorgement of compensation on the violation of some "other duty" to Plaintiff, North Carolina does not recognize a claim for an employee's breach of a duty of loyalty.  *See Dalton*, 353 N.C. at 653, 548 S.E.2d at 709 ("[A]lthough our state courts recognize the existence of an employee's duty of loyalty, we do not recognize its breach as an independent claim.  Evidence of such a breach serves only as a justification for a defendant-employer in a wrongful termination action by an employee.").  Plaintiff has not sufficiently alleged facts that would allow the Court to order a disgorgement of compensation from Garrett.  Garrett's motion to dismiss Plaintiff's claim for disgorgement of compensation should be GRANTED.

I.     *Motion for permanent injunction*

50.     Neither party makes any argument regarding Plaintiff's Twelfth Claim for Relief, which is styled as a "Motion for Preliminary and Permanent Injunction." (ECF No. 261, at ¶¶ 172–73.)  The Court previously denied Plaintiff's motion for preliminary injunction as to all the defendants, including Garrett.  *Global Textile All., Inc. v. TDI Worldwide, LLC*, 2017 NCBC LEXIS 108 (N.C. Super. Ct. Nov. 21, 2017).

51. Nevertheless, since certain of Plaintiff's claims against Garrett survive dismissal and might provide a basis for a permanent injunction against Garrett, the Court will not at this time dismiss the claim for a permanent injunction against Garrett. To the extent Garrett's motion to dismiss seeks dismissal of Plaintiff's claim for permanent injunction against Garrett, the motion should be DENIED.

THEREFORE, IT IS ORDERED that the Motion to Dismiss is GRANTED, in part, and DENIED, in part, as follows:

52. The Motion to Dismiss Plaintiff's claims against Garrett for breach of fiduciary duty and constructive fraud is GRANTED.

53. The Motion to Dismiss Plaintiff's claim against Garrett for actual fraud is DENIED.

54. The Motion to Dismiss Plaintiff's claim against Garrett for civil conspiracy is DENIED.

55. The Motion to Dismiss Plaintiff's claim against Garrett for unfair or deceptive trade practices in violation of the UDTPA should be DENIED.

56. To the extent the Motion to Dismiss seeks dismissal of Plaintiff's claims for common law unfair competition and business conversion based on Garrett's alleged fraudulent conduct, it is DENIED. To the extent the Motion to Dismiss seeks dismissal of Plaintiff's claims for common law unfair competition and business conversion based on Garrett's alleged conversion of Plaintiff's trade secrets, it is GRANTED.

57.     The Motion to Dismiss Plaintiff's claim for a constructive trust against Garrett is GRANTED.

58.     The Motion to Dismiss Plaintiff's claim for disgorgement of compensation against Garrett is GRANTED.

59.     To the extent Garrett seeks dismissal of the claim for permanent injunction against Garrett, the claim is DENIED.


SO ORDERED, this the 9th day of October, 2018.


      /s/ Gregory P. McGuire_____
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases